UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel Eustus Robbins,

        Petitioner,               Court File No. 20-cv-2094 (DSD/LIB)

v.

                           **REPORT AND RECOMMENDATION**

Warden Birkholz, et al.,

        Respondents.

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Daniel Eustus Robbins' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Docket No. 1].

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED with prejudice**.

I.      **BACKGROUND AND STATEMENT OF FACTS**

Petitioner Daniel Eustus Robbins ("Petitioner") is currently incarcerated at San Antonio RRM in San Antonio, TX. (Notice [Docket No. 14]). Petitioner is serving a 78-month sentence, to be followed by four years of supervised release, for Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Tomford Decl. [Docket No. 10] ¶ 4; see also, Ex. B [Docket No. 10-2], at 2). Petitioner's projected release date is February 12, 2022. (Tomford Decl. [Docket No. 10] ¶ 4; see also, Ex. B [Docket No. 10-2], at 4).

While he was previously housed at the Federal Prison Camp in Duluth, Minnesota ("FPC Duluth"), Petitioner participated in the Federal Bureau of Prisons ("BOP") Resident Drug Abuse

Program ("RDAP"). (See, e.g., Tomford Decl. [Docket No. 10] ¶ 3). The RDAP was created as part of the Violent Crime Control Law Enforcement Act of 1994, in which Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To meet that requirement, the BOP must provide such treatment to "all eligible prisoners." 18 U.S.C. § 3621(e). As an incentive for prisoners to participation in, and complete, such programs, the BOP may reduce the term of imprisonment by up to one year for a nonviolent offender who completes the RDAP. 18 U.S.C. § 3621(e)(2)(B).

There are three components to the RDAP, and to successfully complete the RDAP, a prisoner must successfully complete all three components. 28 C.F.R. § 550.53(a). To be admitted into the RDAP, a prisoner "must have a verifiable substance use disorder," "must sign an agreement acknowledging program responsibility," and "must be able to complete all three components" of the RDAP. 28 C.F.R. § 550.53(b). Prisoners "admitted to the RDAP are ordinarily housed in a housing unit separated from the inmate general population," which "supports pro-social attitudes and behaviors, and is intended to isolate RDAP participants from negative peer pressure of the larger prison environment." (Tomford Decl. [Docket No. 10] ¶ 6).

Prisoners may be expelled from the RDAP "because of disruptive behavior related to the program or unsatisfactory progress in treatment." 28 C.F.R. § 550.53(g)(1). Prisoners must typically be given at least one formal warning before being removed from the RDAP, however, "[a] formal warning is not necessary when the documented lack of compliance with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff or other inmates." 28 C.F.R. § 550.53(g)(2); (see also, Ex. A [Docket No. 10-1], at 34 (providing for immediate expulsion of a prisoner if a DHO finds they have

2

committed a prohibited act involving alcohol or drugs, violence or threats of violence, escape or attempted escape, or any 100-level series incident)). A prisoner who has previously declined, withdrawn, or failed the RDAP may reapply for admission to the RDAP after 90 days. (Tomford Decl. [Docket No. 10] ¶ 8; see also, Ex. A [Docket No. 10-1], at 35).

On May 27, 2020, staff at FPC Duluth informed RDAP staff that Petitioner "had received a letter in the mail containing photographs that smelled like school glue." (Ex. C [Docket No. 10-3], at 1). "The label of the sender and postmark did not match, and stamps were placed upside down." (Id.). A NIK test drug screening was conducted on the photographs, and the results were positive for ecstasy/MDMA. (Id.).

Also on May 27, 2020, RDAP staff met with Petitioner and discussed the photographs, the results of the NIK test drug screening, and concerns that Petitioner was having controlled substances introduced into the RDAP unit. (See, Id.; Pet. [Docket No. 1], at 7–8). Petitioner stated that he was expecting photographs from his mother. (See, Pet. [Docket No. 1], at 1). Petitioner also stated that "its got to be a false positive," and he requested that the photographs be sent out "to a lab where they can do an independent test." (Pet. [Docket No. 1], at 8). Petitioner also stated "that he had 50 additional pictures that were printed off at the same time as the same pictures that were tested." (Id.).

On May 28, 2020, Dr. T. Tomford "confiscated 50 photos found in [Petitioner's] possession." (Ex. C [Docket No. 10-3], at 1; Ex. D [Docket No. 10-4]; see also, Pet. [Docket No. 1], at 9–10). Petitioner "acknowledged that he had recently received the photographs via mail from family." (Ex. D [Docket No. 10-4]). Those "photographs were tested using the NIK test, and again revealed positive results for MDMA (ecstasy)." (Tomford Decl. [Docket No. 10] ¶ 10; see also, Pet. [Docket No. 1], at 9). Dr. Tomford completed an incident report (the Incident Report")

3

charging Petitioner with violating BOP disciplinary code 113, Possession of any Narcotics. (Tomford Decl. [Docket No. 10] ¶ 10; see also, Ex. D [Docket No. 10-4]). Petitioner stated that he "want[ed] the pictures sent out to an outside lab for testing," and that he was willing to pay for the testing. (Ex. D [Docket No. 10-4]). A copy of the Incident Report was given to Petitioner. (Ex. D [Docket No. 10-4]; Ex. E [Docket No. 10-5], at 1). The charge alleged against Petitioner in the Incident Report was referred to a Discipline Hearing Officer ("DHO") for further hearing. (Ex. D [Docket No. 10-4]).

Also on May 28, 2020, Dr. Tomford expelled Petitioner from RDAP without an intervention. (See, Tomford Decl. [Docket No. 10] ¶ 11; see also, Pet. [Docket No. 1], at 10). Dr. Tomford completed a discharge note, in which he indicated that Petitioner "was expelled from RDAP . . . due to his engagement in behaviors that created an immediate, and ongoing threat to other inmates and staff." (Ex. C [Docket No. 10-3], at 1). Dr. Tomford explained the discharge by stating that Petitioner "displayed an inability to follow basic rules associated with his placement," he "broke the trust of RDAP peers by introducing an illicit substance onto the unit," "he received a 100-series Incident Report," he "displayed inability to develop prosocial habits," and his "actions provide evidence of his significant struggles with the following Eight Attitude [sic] of Change: Responsibility, Honesty, Willingness, Humility, and Caring," which "serve as a cornerstone of the RDAP treatment experience and are essential if an individual wishes to make a meaningful and health lifestyle change." (Id.). Dr. Tomford further explained that, in his opinion, Petitioner's "introduction of an illicit substance into the RDAP therapeutic unit created an immediate and ongoing concerns for other inmate's [sic] and staff," and "[g]iven his action, and the other concerns noted above, expulsion status is warranted." (Id. at 1–2).

On June 3, 2020, Petitioner was advised of his rights before the DHO in reference to the charge alleged against Petitioner in the Incident Report. (Ex. E [Docket No. 10-5], at 1).

On June 18, 2020, a disciplinary hearing was held before the DHO regarding the charge in the Incident Report alleging that Petitioner violated BOP disciplinary code 113, Possession of any Narcotics (the "Hearing"). (Id.). Petitioner appeared at the Hearing, and he acknowledged that he received a copy of the Incident Report and understood his rights before the DHO. (Id.). At the Hearing, Petitioner made the following statement on his behalf: "Not guilty, my mom would not send me drugs through the mail." (Id.). Petitioner waived his right to call witnesses. (Id. at 1–2). However, Petitioner requested and was provided with a staff representative who was present at the Hearing and stated, "I met with [Petitioner] and have no concerns." (Id.). Petitioner also "presented a sworn statement from [his] mother that she never altered or modified the pictures that she sent [him]." (Id. at 2).

On July 6, 2020, the DHO issued a written Discipline Hearing Officer Report on the Hearing (the "Hearing Report"). (Ex. E [Docket No. 10-5]). The Hearing Report indicated that the DHO had concluded that Petitioner "committed the prohibited act of Possession of any Narcotics, code 113." (Id. at 2). The Hearing Report explained that in reaching that conclusion, the DHO considered the Incident Report, evidence recovered by Dr. Tomford, other documentary evidence provided by BOP staff that outlined the process by which the NIK test drug screening was conducted on the photographs, and Petitioner's statements made during the investigation and at the Hearing. (Id. at 2–3). The Hearing Report further explained that "the DHO considered [Petitioner's] denial," but the DHO gave "greater weight to the staff member's account of the incident." (Id. at 3).

Based on the DHO's finding that Petitioner had committed the prohibited act of Possession of Narcotics, Petitioner was sanctioned with 41 days disallowance of good conduct time, 14 days discipline segregation, 180 days loss of phone privileges, and 180 days loss of email privileges. (Id.).

## II.    PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

On October 1, 2020, Petitioner initiated the case presently before the Court. [Docket No. 1]. Petitioner originally presented his Petition as a "Complaint for Violations of Civil Rights Under 42 U.S.C. § 1983," which he filed along with an application to proceed in forma paupris. [Docket Nos. 1, 2]. Upon preliminary review, this Court noted that the relief ultimately sought by Petitioner is an early release from his term of incarceration, which can be sought only in a petition for a writ of habeas corpus. Accordingly, on December 2, 2020, this Court issued an Order directing Petitioner to inform the Court whether or not he objected to the reinterpretation of his Complaint as a petition for habeas corpus. [Docket No. 5].[1] On December 10, 2020, Petitioner responded to this Court's December 2, 2020, Order, and he "request[ed] that the complaint be re-interpreted as a Habeas Corpus petition." (Response [Docket No. 6]).[2]

In liberally construing Petitioner's pro se Petition and Reply, Petitioner requests habeas relief on two grounds. First, Petitioner challenges his expulsion from RDAP and loss of the discretionary one-year RDAP sentence reduction. (See, Pet. [Docket No. 1]). Second, Petitioner challenges the disallowance of his good conduct time following the June 18, 2020, Hearing. (See, Reply [Docket No. 12], at 3–4).

---

[1] The Court also noted that the Complaint/Petition is ambiguous as to whether or not Ladonna Robbins intended to act as a plaintiff in this action, and the Court further directed Petitioner to inform the Court whether or not Ladonna Robbins intended to act as a plaintiff or petitioner in this matter. (Order [Docket No. 5]).
[2] Petitioner also requested "that Mrs. Ladonna Robbins be dismissed from the petition." (Id.).

6

### A. Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10–cv–4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011), report and recommendation adopted by 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Mcintosh v. U.S. Parole Com'n, 115 F.3d 809, 812 (10th Cir. 1997) (holding that a federal inmate's challenge to a loss of good time credit is properly brought under Section 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody)). "A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court." Matheny, 307 F.3d at 711.

### B. Analysis

#### i. Expulsion from RDAP and Loss of the Discretionary One-Year RDAP Sentence Reduction

In his first ground for habeas relief, Petitioner challenges his expulsion from RDAP and loss of the discretionary one-year RDAP sentence reduction. (See, Pet. [Docket No. 1]). Petitioner's arguments are not well articulated. (See, Id.). As such, they can be liberally construed as simply seeking judicial review of the decision to expel him from the RDAP, as well as, claiming that his due process rights were violated by his expulsion from RDAP and loss of the discretionary one-year RDAP sentence reduction. (See, Pet. [Docket No. 1]).

##### 1. Subject-Matter Jurisdiction

Petitioner claims that the BOP wrongfully decided to expel him from the RDAP because he "had done everything that was asked of him" and he was "was kicked out for something he was

7

innocent of." (See, Pet. [Docket No. 1], at 10). As such, Petitioner is plainly seeking judicial review of the BOP's decision to expel him from the RDAP on grounds that they erred in his particular case. (See, Id.).

Under the Administrative Procedure Act ("APA"), courts may review decisions made by federal administrative agencies to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. However, such review is not allowed where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).[3]

Pursuant to § 3625, BOP discretionary decisions under § 3621 are not subject to review under the APA. See, 18 U.S.C. § 3625; see also, Lipczynski v. Marques, No. 18-cv-1466 (JNE/BRT), 2018 WL 4956717, at *4 (D. Minn. Sept. 6, 2018), report and recommendation adopted by 2018 WL 4955236 (D. Minn. Oct. 12, 2018) (quotations and citations omitted) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions, and courts in this district have accordingly held that § 3625 precludes judicial review of the BOP's discretionary decisions under § 3621."). Accordingly, "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621." Lipczynski, 2018 WL 4956717, at *5 (quoting Reeb v. Thomas, 636 F.3d 1224, 1228 (9th Cir. 2011)).

To the extent that Petitioner claims that the BOP erred in this particular case and wrongfully decided to expel him from the RDAP, this Court lacks subject matter jurisdiction. See, Reeb, 636 F.3d at 1228 (finding that the court lacked subject matter jurisdiction to review the petitioner's

---

[3] The Court notes that Petitioner argues that he was expelled from the RDAP and denied the discretionary one-year RDAP sentence reduction "capriciously and arbitrarily," which indicates that Petitioner is challenging the BOP's decision under the APA. (See, Reply [Docket No. 12], at 3); see also, Jones v. Fikes, No. 20-cv-1341 (SRN/HB), 2020 WL 8513799, at *4 (D. Minn. Nov. 2, 2020), report and recommendation adopted by 2021 WL 533700 (D. Minn. Feb. 12, 2021) (alterations in original) (finding that the petitioner's argument that a BOP decision was "arbitrary[,] capricious[,] and a[n] abuse of discretion" indicated that the petitioner was challenging the decision under the APA).

8

challenges to "the BOP's decision to expel him from the RDAP" on grounds that "the BOP erred in his particular case"); Lipczynski, 2018 WL 4956717, at *5 (same). Therefore, the undersigned recommends that those claims be **dismissed with prejudice**.

### 2. Due Process

Petitioner also argues that his due process rights were violated by his expulsion from RDAP and loss of the discretionary one-year RDAP sentence reduction. (See, Pet. [Docket No. 1]).

"[J]udicial review remains for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority." Ambrose v. Jett, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013); see also, Reeb, 636 F.3d at 1228 & n.4. However, to successfully bring his asserted due process claim, Petitioner must demonstrate that he has a constitutionally cognizable liberty interest in RDAP participation and the discretionary one-year RDAP sentence reduction. Numerous courts have found that no such liberty interest exists. See, Reeb, 636 F.3d at 1228 n.4 ("[I]nmates do not have a protected liberty interest in either RDAP participation or in the associated discretionary early release benefit."); Giannini v. Fed. Bureau of Prisons, No. 10-1998, 2010 WL 5297188, at *1 ("[N]either the Due Process Clause nor 18 U.S.C. § 3621(e)(2)(B) creates a liberty interest in sentence reduction upon completion of the [RDAP] . . . ."); Staszak v. Romine, No. 99-2519, 2000 WL 862836, at *1 (internal quotation marks omitted) (8th Cir. 2000) ("[The petitioner] did not have a liberty interest in his § 3621(e) provisional release date, and he suffered no deprivation of due process rights as a result of rescission of his early release."); see also, Lipczynski, 2018 WL 4956717, at *5 (finding that any due process challenge to a prisoner's expulsion from the RDAP was foreclosed because the prisoner did not have a liberty interest in discretionary early release).

9

Indeed, Petitioner expressly acknowledges that he "does not have an [sic] liberty interest in participating in the program." (Reply [Docket No. 12], at 3).

Because Petitioner does not have a liberty interest in RDAP participation and the discretionary one-year RDAP sentence reduction, his due process challenge to being expelled from the RDAP fails. See, e.g., Reeb, 636 F.3d at 1228 n.4; Lipczynski, 2018 WL 4956717, at *5. Therefore, to the extent that Petitioner claims that his due process rights were violated by his expulsion from RDAP and loss of the discretionary one-year RDAP sentence reduction, the undersigned recommends that those claims be **dismissed with prejudice**.

### ii. The Hearing and Disallowance of Good Conduct Time

In his second ground for habeas relief, Petitioner challenges the disallowance of his good conduct time following the June 18, 2020, Hearing. (See, Reply [Docket No. 12], at 3–5). Specifically, Petitioner contends that he was denied due process because his request "that the pictures be tested at an independent lab" was not honored, and he was found to have committed the prohibited act of Possession of Narcotics "without any real evidence." (See, Id.).

As a preliminary matter, this Court notes that Petitioner raised his present argument regarding the disallowance of his good conduct time for the first time in his Reply brief. [Docket No. 12]. "Typically, habeas petitioners may not raise new arguments or claims for relief in their reply memoranda." Spencer v. Rios, 18-cv-2639 (MJD/TNL), 2019 WL 9313598 at *7 (D. Minn. Apr. 23, 2019), report and recommendation adopted by 2019 WL 2373333 (D. Minn. June 5, 2019); see also, Cuellar v. Fisher, No. 10-2041 (SRN/FLN), 2011 WL 1261622, at *5 (D. Minn. Feb. 24, 2011) ("Because Petitioner raises this claim for the first time in his reply brief, it is not properly before this Court."). However, even if it were permissible for Petitioner to raise the present argument, it would fail for the reasons stated below.

10

The United States Supreme Court has recognized that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)); see also, Espinoza v. Peterson, 283 F.3d 949, 951 (8th Cir. 2002) (depriving a federal inmate of thirteen days good time credit as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause).

> Where a prison disciplinary hearing may result in the loss of good time credits, Wolff held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563–67). "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." Hill, 472 U.S. at 454 (citations omitted). However, an inmate's due process interests are necessarily tempered and balanced against the "legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." Id. at 454–55 (citing Ponte v. Real, 471 U.S. 491 (1985); Baxter v. Palmigiano, 425 U.S. 308, 321–22 (1976); Wolff, 418 U.S. at 562–63).

Accordingly, a federal inmate has received due process if "some evidence" supports a prison disciplinary board's revocation of good time credits. Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached

11

by the disciplinary board." Id. at 455–56. The United States Supreme Court explicitly declined to adopt a more stringent standard for reviewing prison disciplinary decisions, as due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456. The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

Based on the evidence in the present record, Petitioner received the constitutionally required protections during the course of the at-issue disciplinary proceeding, the June 18, 2020, Hearing.

The record shows that Petitioner was provided with advanced written notice of the charge when the Incident Report was delivered to Petitioner on May 28, 2020. (Ex. D [Docket No. 10-4]; Ex. E [Docket No. 10-5], at 1). The record further shows that although Petitioner was afforded the opportunity to call witnesses Hearing, Petitioner waived his right to do so. (Ex. E [Docket No. 10-5], at 1–2). However, Petitioner did present "a sworn statement from [his] mother that she never altered or modified the pictures that she sent [Petitioner]." (Id. at 2). Petitioner also made the following statement on his behalf: "Not guilty, my mom would not send me drugs through the mail." (Id. at 1). In addition, Petitioner requested and was provided with a staff representative who was present at the Hearing and stated, "I met with [Petitioner] and have no concerns." (Id.). Following the Hearing, on July 6, 2020, the DHO issued a written Hearing Report that indicated the evidence relied on and the reasons for the DHO's decision. (Ex. E [Docket No. 10-5]). Thus, the Wolff requirements were fulfilled, and Petitioner was not deprived of constitutional due process. See, 418 U.S. at 563–67.

Furthermore, the present record before the Court indicates that "some evidence" supported the finding of the DHO that Petitioner violated code 113, which prohibits "Possession of any Narcotics." 28 C.F.R. § 541.3; (Ex. E [Docket No. 10-5]).

A RDAP staff member, Dr. Tomford, "confiscated 50 photos found in [Petitioner's] possession." (Ex. C [Docket No. 10-3], at 1; Ex. D [Docket No. 10-4]; Ex. E [Docket No. 10-5]; see also, Pet. [Docket No. 1], at 9–10). Petitioner "acknowledged that he had recently received the photographs via mail from family." (Ex. D [Docket No. 10-4]). Those "photographs were tested using the NIK test, and . . . revealed positive results for MDMA (ecstasy)." (Tomford Decl. [Docket No. 10] ¶ 10; Ex. C [Docket No. 10-3]; Ex. D [Docket No. 10-4]; Ex. E [Docket No. 10-5]; see also, Pet. [Docket No. 1], at 9).

Because the record identifies evidence that could support the conclusion reached by the disciplinary board, the Court is to look no further into Petitioner's evidentiary challenges. As articulated above, the "some evidence" standard does not require examination of the entire record before the disciplinary board nor an independent analysis and/or weighing of the evidence available to the board. Hill, 472 U.S. at 455–56. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. The Court finds that "some evidence" supports the results of the subject disciplinary proceeding.

Therefore, to the extent that Petitioner claims that his due process rights were violated by the disallowance of his good conduct time following the June 18, 2020, Hearing, the undersigned recommends that those claims be **dismissed with prejudice**.

13

### III. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED with prejudice.**

Dated: June 24, 2021　　　　　　　　　　　　　　s/Leo I. Brisbois
　　　　　　　　　　　　　　　　　　　　　　　The Honorable Leo I. Brisbois
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).